HON. SYLVIA HINDS-RADIX                    Hearing Date:  05/23/2023 @ 2:00 p.m.
Corporation Counsel of the City of New York
Attorney for the City of New York and Its Agencies
100 Church Street, Room 5-223
New York, New York 10007
(212) 356-2134
By: Hugh Shull (HS-0236), Ass't Corp. Counsel
hughs@law.nyc.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
In re:
                                                            Chapter 11

DUNBAR PARTNERS BSD LLC,                       Case No. 23-40575 (NHL)

Debtor
----------------------------------------------------------x

**THE NEW  YORK CITY DEPARTMENT OF FINANCE'S**
**SUPPLEMENT TO ITS OBJECTION TO PLAN OF REORGANIZATION**
**WITH RESPECT TO, *INTER ALIA*, THE STAMP TAX EXEMPTION**
**UNDER 11 U.S.C. § 1146(a) AND TAX AVOIDANCE UNDER 1129(d)**

The New York City Department of Finance ("DOF), a party in interest herein, by its counsel, Hon. Sylvia Hinds-Radix, Corporation Counsel of the City of New York, hereby submits this supplement to its Objection to Debtors' Amended Plan of Reorganization [Dkt. No. 44] (the "Amended Plan") with respect to the proposed stamp tax exemption under 11 U.S.C. § 1146(a) and tax avoidance under 1129(d).

1.      The Court is familiar with the record of this case.  At a hearing on confirmation of the Amended Plan on May 16, 2023 (the "Plan Hearing"), the Court invited supplemental briefing by the parties on the issue of the 1146(a) stamp tax exemption requested by the Debtor and to which DOF objected and to confirmation of the Plan generally as tax avoidance under

Bankruptcy Code 1129(d).  See the DOF Objection dated May 15, 2023 9Dkt No 57](the "DOF Objection").[1]

2.      By way of background, the Debtor alleges that prior to the bankruptcy filing, on July 29, 2022, the Debtor entered into a contract of sale with Dunbar Owner LLC ("Dunbar Owner") to purchase the real property located at 2802 Frederick Douglass Boulevard in the City of New York (the "City"), Block 2035 Lot 1 in the Borough of Manhattan (the "Property") for $96,000,000..  See Disclosure Statement for the original plan filed on April 24, 2023 [Dkt No. 33](the "Disclosure Statement") at p.7.

3.      The Debtor and Dunbar entered into amendments on August 17, 2022 and August 26, 2022, which reduced the purchase price under the contract of sale to $92,500,000.  A title company as escrowee holds a $3 million deposit from the Debtor to be applied at closing.  The record shows, as stated at the Plan Hearing by the Debtor's current principal and equity holder, David Goldwasser, (as the sole member of the sole member of the Debtor), that the Debtor asserts that it borrowed the $3 million deposit from a Mr. Newman, who is an listed as an undisputed general unsecured creditor of the Debtor in the Debtor's schedules.  The deposit and the right to purchase under the contract of sale are the Debtor's sole significant assets.  The borrowed deposit is the sole significant pre-petition debt, aside from some attorneys fees of approximately $100,000.00.

4.      The original closing date was November 29, 2022, subject to adjournment.  Dunbar Owner sent two (2)  default letters, the second of which demanded a closing date of February 22, 2023, time being of the essence.  See Disclosure Statement page 7 for these assertions by the Debtor.

---

[1] The DOF withdraws, for the purposes of this case, solely that part of the DOF Objection that argued that the New York City Real Property Transfer Tax is not a stamp or similar tax within the meaning of 1146(a) of the Bankruptcy Code, but maintains the rest of the objection.

5.      On February 22, 2023, the Debtor filed a petition for relief under chapter 11 of title 11 of the United States Code.  The petition was signed by Mr. Goldwasser as the sole member of Preston Court Shares, LLC, the sole member of the Debtor.  See bankruptcy petition dated February 22, 2023 {Dkt. No. 1].

6.      At some point prior to the filing of the bankruptcy case, Mr. Goldwasser alleges that, via Preston Court Shares or otherwise, he purchased the equity interest in the Debtor from Shaya Labin, as stated on the record of the Plan Hearing, for ten dollars.

7.       The Debtor alleged that it filed for bankruptcy to avail itself of the extension of the time to close for sixty days under Bankruptcy Code section 108(b).

8.      The Debtor and Dunbar entered into a stipulation to extend the closing date to May 31, 2023 and reduce the contract price to $86,750,000 (the $3 million deposit plus an additional $83,750,000 at closing), subject to adjustments.  As consideration for the reduction in purchase price the Debtor agreed to pay any transfer taxes for the sale of the Property.  And the right to purchase the Property was assigned to an entity owned by Isaac Hershkovitz under a confirmed plan.  See Exhibit A to motion to approve stipulation filed April 24, 2023, section 9.1-9.4 on pages 10-11.

9.      The Debtor filed an initial plan on April 26, 2023 {Dkt. No. 33] which proposed assignment of the contract of sale and sale by Dunbar Owner directly to the assignee.

10.     A Second Plan Supplement was filed on April 28, 2023, attached to which is a loan application between Shaya Labin (the alleged prior equity holder of the Debtor) and Isaac Hershkovitz as sponsors and MF1 Capital LLC as lender dated April 4, 2023.  At the hearing, Mr. Goldwasser was uncertain of the equity interest of Mr. Labin in the proposed purchaser of the Property under the Amended Plan. The application provides for the assumption by the

sponsors of a loan and security agreement between the lender and Fairstead Existing Borrower dated February 23, 2021. Upon information and belief this refers, inter alia, to a security agreement and mortgage entered into between the lender and Dunbar Owner on or about February 23, 2021 consolidating a prior assigned note, mortgage and new mortgage in the total combined principal amount of $86,000,000, which were recorded on March 9, 2021. https://acrisweb.csc.nycnet/DS/DocumentSearch/DocumentImageView?doc_id=2021022700082 004.

11.     At the hearing on conditional approval of disclosure statement for the initial Plan on May 2, 2023 the Court apparently expressed concern over granting a proposed 1146 exemption to a transfer of property where the Debtor was not the owner.

12.     The Debtor filed the Amended Plan on May 4, 2023. Now, instead of an assignment of the contract of sale and sale by Dunbar Owner to the buyer, the Amended Plan proposed a sale to the Debtor an a near simultaneous sale from the Debtor to the proposed purchaser. DOF submits this a distinction without a difference and form over substance. DOF's Plan Objection believes this is in essence a sale of a non-debtor asset where a non-debtor ends up as owner and a section 1146 exemption is not warranted.

13.     DOF submits that the entire reason for the Plan is to obtain the transfer tax exemptions. The City's transfer tax and State transfer tax is far more than the actual benefit to the Debtor's estate, i.e., of funds used to pay creditors, and more than the delta between the sales price under the contract of sale purchase price at the time the bankruptcy was filed and the proposed reduction (which totals $5,850,000 in reduced purchase price). Th primary use of funds to pay creditors (aside from administrative costs) is $3 million to repay the deposit claim and $145,00 from pre-petition legal fees and sundry.

Case 1-23-40575-nhl    Doc 61    Filed 05/18/23    Entered 05/18/23 17:03:52

14.     The City's transfer tax on a sale of $92,500,000 as under the original contract of sale as amended would have been be 2.625% of the purchase price, or $2,428,125.  The State transfer tax would be $6,012,500, or 6.5% of the purchase price. Combined that's $8,440,625.00. Under the new proposed plan, if one uses $86,750,00 as the proposed purchase price, the City sales tax would be $2,277,187.50, plus an additional $59,776.18 as additional consideration if the buyer pays the tax.for a total of $2,236,963.68, and the State transfer tax would be at least $5,638,750.  Combined the savings would exceed $7,875,000.

15.     The DOF's Plan Objection already provides case law and argument why the 1146 exemption does not apply herein.   Regardless of the change in form between the Plan and Amended Plan, this is still a transaction where the initial owner is a non-debtor and the ultimate owner is a non-debtor.  At the Plan Hearing, Dunbar Owner's counsel cited <u>In re Smoss</u> for the proposition that the Court should grant the exemption.  However, in <u>Smoss</u>, the debtor owned the property pre-petition and it was estate property from the outset of the bankruptcy case.  It had entered into a contract of sale pre-petition, and under the settlement the contract of sale vendee had assigned its rights and the property was sold to a 3rd party by the Debtor.  See <u>In re Smoss</u> 54 BR 950 (EDNY 1985).  <u>Smoss</u> also granted the 1146 exemption even though the  transfer from the estate was prior to confirmation and thus not under a plan confirmed as required by 1146.  <u>In re Florida Dep't of Revenue v. Picadilly Cafeteria, Inc.</u>, 128 S. Ct. 2326, 2338, 171 L.Ed2d 203, 219 (2008)(pre-confirmation transfers not entitled to exemption, which must be narrowly construed and read in conjunction with other code provisions).  In any event, <u>Smoss</u> did not involve the same fact pattern as herein, where the Property was not property of the Debtor's estate when the case was filed.

16,    Dunbar Owner's counsel also believed that <u>In re Kerner</u>, cited in DOF's objection, grants an exemption in similar circumstances as herein.    <u>In re Kerner Printing Co.</u>, 188 B.14.    R. 121 (Bankr. S.D.N.Y. 1995) (denying real property transfer tax exemption to a transfer of property among non-debtors).  Kerner Printing involved a going concern, a printing business which leased condo units to operate its business from the New York City Industrial Development Agency ("NYCIDA") which owned the real property and leased it to the Debtor. A city sub-division or agency ah had also made small business loans to the debtor to operate the printing business.  Ultimately the Debtor had sold the printing operation and sub-leased the units and filed for bankruptcy.  It had a right of first refusal to buy under the lease, which it assigned as part of the plan.  First, the sale to the Debtor was already exempt from transfer tax under 11-2106 of the NYC Admin. Code as a sale by a political sub-division of the state, as NYCIDA is sponsored by the City.  The City objected to the exemption for sales by New Kerner, which the court granted and was the only thing the court considered, and it clearly held that sales between non-debtors were not exempt under 1146.  This is completely unlike the case at hand, where the Debtor's sole asset and presumed reason for it being formed was to enter into a contract to buy the Property.  It had no other interest, leasehold or otherwise, at the time of filing, and was never a going concern.

17.    The Debtor's response to the Plan Objection cites cases from other jurisdictions which the Court should reject.

18.     DOF submits that, while perhaps one of the reasons the Debtor filed the case was to extend its time to close on the contract of sale.  The record shows, however, that the Debtor in fact could not close on the initial contract of sale at the original purchase price, or at least it has not done so.  Mr. Goldwasser stated on the record to the effect that, absent the transfer tax

exemption, there would be no transfer and transfer taxes would not be paid in any event. Presumably there is some economic value at which the Property could be sold, but irrespective, it is clear that one purpose of the bankruptcy filing was to obtain relief under 1146.

19.    Certainly, the primary purpose of the Amended Plan is to obtain the transfer tax exemption.  The contract of sale could not be closed at the original price and was reduced by over $5 million, and the transfer tax savings are approximately $7.875 million even under the Amended Plan.  The savings on the City transfer tax alone are over $2.2 million.

20.    Section 1129(d) provides that the Court cannot confirm a plan if the primary purpose of the plan is avoidance of tax.  It need not be the sole purpose, but the predominant purpose. Furthermore, congress clearly had 1146 in mind in crafting 1129(d).

21.    In the Collier's Bankruptcy Code Pamphlet Edition, page 965, under 11 USC sec. 1129 legislative history it says:

"Subsection (d) requires the court to deny confirmation if the principal purpose of the plan is the avoidance of taxes (**through use of section 346 and 1146**, and applicable provisions of State law or the Internal Revenue Code governing bankruptcy reorganizations) or the avoidance of section 5 of the Securities Act of 1933 (through use of 1145).

[House Report No. 95-595, 95th Cong., 1st Sess. 418 (1977).] Emphasis added.

22.    In other words the use of 1146 for tax avoidance was contemplated as something which could prevent a plan from being confirmed, if this was the principal, not even the sole, purpose for seeking confirmation. Further, that the plan must be proposed in good faith and not by means forbidden by law is separate from the requirement that the case itself can't be commenced in bad faith. Having obtained the result it needed in filing bankruptcy and extending its time to close, the Debtor should not be permitted to confirm a plan whose sole tangible purpose is obtaining an exemption to enable the closing of the contract of sale it entered into at a

reduced price.  It obtained its Bankruptcy Code section 108 extension of time to close, so that purpose for filing was already met.  Now, since it can't close on that contract at the original price, it seeks confirmation of a plan with an 1146 exemption.

23.    Whatever the Debtor's intention, or Mr. Labin's, at the time of the entry into the contract of sale, or Mr. Goldwasser's (who acknowledged he has substantial experience in bankruptcy matters)  at the time of filing the bankruptcy, it was clear by the time of the proposed Amended Plan this was the only way to close at a reduced price.  There would be no practical distinction between what the Debtor did here, and a debtor which enters into a contract of sale at $92.5 million with a borrowed deposit put down, files the next day and proposes a plan at a reduced price seeking the tax exemption.   Nothing would prevent some other party from doing this if this type of plan is allowed to be confirmed with a tax exemption.

24.     There's no need for government to prove what was the intent of the Debtor at the time of filing or at the time the contract was entered into.  It is clear from the preponderance of evidence on the record that the primary purpose of the Amended Plan is to obtain the tax exemption.  DOF submits therefore the Amended Plan cannot be confirmed under 1129(d), and the Plan cannot be confirmed if it grants the 1146 exemption from the City's transfer tax on the sale of the Property.     Read in conjunction, 1129(d), 1146, and the congressional statements regarding 1129(d) referring to 1146, congress did not intend to grant tax exemptions under a plan for this type of transaction.

Wherefore, for all of the reasons set forth above, the City requests that the Court not confirm the Plan, and grant such other and further relief as it deems just and proper.

Dated: New York, New York
        May 18, 2023                         HON. SYLVIA HINDS-RADIX
                                             Corporation Counsel of the City of New York
                                             Attorney for the NYC Department of Finance
                                             By:     /s/ Hugh H. Shull
                                                     Hugh H. Shull, Ass't Corp Counsel
                                                     100 Church Street, Room 5-233
                                                     New York, New York 10007
                                                     Tel.  (212) 356-2138
                                                     hughs@law.nyc.gov