**LEECH TISHMAN ROBINSON BROG, PLLC**
875 Third Avenue
New York, New York 10022
Fred B. Ringel
Clement Yee
*Attorneys for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

In re:                                                                        Chapter 11

**DUNBAR PARTNERS BSD LLC,**                      Case No.: 23-40575 (NHL)

                                Debtor.
--------------------------------------------------------X

**SUPPLEMENTAL MEMORANDUM IN SUPPORT**
**OF TRANSFER TAX EXEMPTION UNDER 11 U.S.C. §1146(A)**

**TO THE HON. NANCY HERSHEY LORD**
**UNITED STATED BANKRUPTCY JUDGE:**

      Dunbar Partners BSD LLC, by its attorneys Leech Tishman Robinson Brog, PLLC, submit this supplemental memorandum (a) to respond to The New York City Department of Finance's ("DOF") Objection to Plan of Reorganization With Respect to, *Inter Alia*, the Stamp Tax Exemption Under 11 U.S.C. § 1146(a) and Tax Avoidance Under 1129(d) ("DOF Objection")[1] and (b) in support of the Debtor's request to exempt certain transactions from transfer taxes under section 1146(a) of the Bankruptcy Code. This supplemental brief is intended to address some of the critical case law on this issue, some errors made in the DOF Objection, and to address concerns expressed by the Court.

---

[1] DOF has filed a Supplement to the DOF Objection ("DOF Supplement").

1

<u>Memorandum</u>

1.     The Debtor's Amended Plan of Reorganization (ECF 44) ("<u>Plan</u>") fits squarely within the plan meaning of section 1146(a) in that it is based on the delivery of an instrument of transfer, conveying the Property, after confirmation of the Plan, so that Dunbar Owner deeds the Property to the Debtor under the Contract of Sale.[2] After the Debtor obtains title from Dunbar Owner, it will deliver a deed (an instrument of transfer) under the confirmed Plan to 2802-2816 FDB LLC ("<u>Purchaser</u>") in accordance with the provisions of the Agreement between the Debtor and Purchaser ("<u>Purchase Agreement</u>").[3] *See* Plan at Sec. 5.2.  Thus, the Debtor's plan, by its terms qualifies for the exemption under section 1146(a) which exempts transfers from "stamp tax or similar tax" if there is the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129."  11 U.S.C. § 1146(a).

2.     It is perfectly appropriate for a debtor to order its affairs to pay or incur the least amount of tax that it must pay and the Debtor has done exactly what it may do under the law.  As Learned Hand once observed "[a]ny one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes."  *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir. 1934).

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan.

[3] The Purchase Agreement was filed as Ex. F to the Plan Supplement and replaces the Assignment Agreement, filed as Ex. C in the Plan Supplement, which refers to a previous iteration of the Plan which the Debtor is no longer pursuing.

The Debtor has structured this transaction to consider potential issues the Court noted with the original structure and arrange its affairs so its [transfer] taxes will be as low as possible here.

3. At the May 16th hearing, the Court expressed concern that approving the transaction at issue might "create a cottage industry" of debtors looking to file cases for the transfer tax exemption. The Debtor believes this comment may have stemmed from the DOF's claims that the transfer taxes "lost" if the transfer was treated as subject to 1146(a) would be between 9.125% and 11%. DOF Objection at ¶7-8. To bolster its position, the DOF claims an additional $1,225,500 would be lost on "new money mortgage recording" even though the Debtor is not seeking an exemption for mortgage recording taxes here and, in any event, there is no "new money mortgage" at issue.

4. First, the last thing a party with a purchase contract that is having trouble raising the money to close, generally in the face of a deadline, is to file chapter 11. A filing has many disincentives built into the process. The filing by itself is guaranteed to increase the cost of financing (if financing is available), increase the fees and expenses of procuring funding through additional broker fees, lender's legal costs, and the costs of administering a Chapter 11 case. The Chapter 11 filing may also adversely impact the principals on their next real estate deal when they have to disclose to prospective lenders that they have filed a Chapter 11 case. Lenders view such people as having an increased credit risk. Filing Chapter 11 is not a first, second, or third choice for most real estate professionals.

5.  This is in part evidenced by the fact that even with a decrease in the purchase price, Purchaser is required to provide new equity to close of over $11 million, which will fund the increased transaction costs and pay over $3.5 million to the Debtor's estate to pay its creditors. As detailed below, the filing was not done for the transfer tax exemption as the transfer tax exemption of 2.625% of the total consideration of $2,257,000. The exemption is less than the amount needed to fund plan payments to the Debtor's creditors and the equity infusion needed to close the deal. The exemption is not so large that one would file just to obtain it, although the existence of the exemption no doubt facilities the transaction to allow creditors to get paid, which is exactly what the purpose of section 1146(a) is supposed to serve.

6.  The DOF Objection contends the total proposed tax exemptions were approximately 11%, comprising of (i) New York City transfer tax of 2.625%, (ii) New York State transfer taxes of 4% and 2.5%, (iii) New York City mortgage recording tax of 1.425%, and (iv) New York State mortgage recording tax of 0.5% for a total of 11.05% in taxes.[4] At the proposed purchase price of $86,750,000, that would be an exemption of $9,585,875, which prompted the Court to wonder if parties might seek to purposefully enter into chapter 11 to seek a transfer tax exemption if they could essentially exempt up to 11% of the purchase price in taxes.[5]

---

[4] The DOF incorrectly asserts that the Debtor is seeking a mortgage tax exemption.
[5] In the DOF Supplement, the DOF continues to utilize the incorrect New York State transfer tax rate to inflate the total transfer tax due under the plan.

4

7.      Here the DOF is attempting to "guild the lily" by claiming that the transfer taxes to be exempted are "substantial" in a transaction like the one at issue. DOF Objection at ¶7.  This claim by the DOF is simply untrue.

8.      The notion that the aggregate of transfer taxes for any real estate transaction was 11% would put a significant economic damper on the real estate market in New York City.  No one would buy property if the transfer tax exceeded 11% (which is 3% more than New York City sales tax). But the amount asserted by the DOF is simply wrong. The primary transfer taxes at issue are the New York City transfer taxes at the rate of 2.625%. The New York State transfer tax is **NOT** 4% (plus 2.5% for a total of 6.25% or almost three times New York City's transfer taxes), but New York State transfer taxes are 0.004% (four one-hundredths of a percent, not 4%).  *See* NY Tax § 1402 ("tax is hereby imposed on each conveyance of real property . . . at the rate of two dollars for each five hundred dollars").  The DOF points to section 1401 and 1402(a) of the New York State Real Estate Transfer Tax Law and neither section produces a 4% or a 2.5% transfer tax number.  Section 1401 consists of definitions and section 1402(a) merely states that there will be another tax on the conveyance of residential real property in excess of one million dollars and the Property is not residential, rendering section 1402(a) inapplicable. *See* NY Tax § 1401 and 1402(a). [6]

---

[6] The Debtor has been unable to determine where the DOF found the 4.0% and 2.5% percentages for New York State transfer tax. With respect to the alleged additional 2.5%, assuming the amount is correct, that is a tax on residential sales in excess of $1 million and the property at issue is a mixed residential rental and commercial building and the DOF cites no authority that this additional tax is applicable to the Debtor's sale.

9. The DOF also failed to consider that N.Y. Tax Law § 1405 provides that transfers in a bankruptcy case are statutorily exempt from New York State transfer tax.[7] Under New York State Real Estate Transfer Tax Law, "conveyances given pursuant to the federal bankruptcy act" are exempt from real estate taxes. *See* N.Y. Tax § 1405 (listing exemption to real estate transfer taxes, including conveyances given under the federal bankruptcy act). Thus, the exemption at issue would amount to no more than $2,257,000, making it implausible one would file a bankruptcy case just for the exemption. While it is no doubt an important constituent part of this transaction, the Purchaser is paying over $11,000,000 to obtain it. The DOF Supplement cites Collier's to argue that confirmation of a plan must be denied if the principal purpose is tax avoidance through section 1146, among other provisions, meaning that if a plan contemplates using section 1146, then the primary purpose must be tax avoidance. However, the language in the House Report was not referenced in section 1146 and the quoted language adds nothing to the discussion that if the Court determines that plan's "principal" purpose is tax avoidance, confirmation can be denied. But the argument that the mere proper and lawful use of section 1146 necessarily results in a plan being proposed for tax avoidance purposes goes too far. Congress saw fit to include section 1146 in the Bankruptcy Code and its use cannot *per se equal* tax avoidance.

---

[7] This fact is also set forth on the transfer tax return that must be filed with each deed, the TP-584. Part 3 of the form deals with exemption and subsection (h) provides for an exemption for "transfers pursuant to the federal bankruptcy act."

6

Moreover, that is clearly not the case here, given that significant funds are coming into the estate to pay creditors.

10. That said, without the transfer tax exemption, Dunbar Owner would probably not have agreed to a reduction in the purchase price, which thus made it economically feasible for the Purchaser to enter into the Purchase Agreement, which provides for a 100% recovery to all general unsecured claims and administrative claims and a small recovery to equity. Without the exemption, all parties are likely to walk away from the Plan leaving no recovery for the Debtor's creditors.

11. At the Closing, a deed will be transferred from Dunbar Owner to the Debtor and then a new deed will be transferred from the Debtor to the Purchaser. The two deeds to be recorded will both be subject to New York City transfer and recording taxes. The Debtor is therefore a party to both transactions, plainly in the chain of title and this is not a transfer between non-debtors.

### I. Transactions Necessary to Consummate a Plan of Reorganization Are Exempt Under Section 1146(a)

11. Recent case law has determined that the "critical inquiry" in determining whether a transfer is exempt from transfer tax is "whether the [] transaction was necessary to the consummation of the [] plan." *State of Fla. v. T.H. Orlando Ltd. et al. (In re T.H. Orlando Ltd.)*, 391 F.3d 1287, 1294 (11th Cir. 2004). This has expanded transfer tax exemptions to transfers that may involve non-debtors such as in *T.H. Orlando*, where the Court found that if a transfer tax exemption was not given to a non-debtor transaction, then the debtor's proposed

financing would have failed, resulting in a foreclosure of the property and unsecured creditors receiving nothing. *Id.* On this basis and because of how important the transfer tax exemption was, the 11th Circuit granted the exemption to a non-debtor. *Id.*

12. Similarly, and like the structure of the Debtor's Plan, the Fourth Circuit in *State of Maryland v. Antonelli Creditors' Liquidating Tr.* exempted a "two-step transaction" between the Debtor, a non-debtor, and a subsequent purchaser, because the transactions were "required by the plan of reorganization." 123 F.3d 777, 785 (4th Cir. 1997). In *Antonelli*, the proposed plan provided that the debtor would transfer its property to a liquidating trust for liquidation. *Id.* at 780. The liquidating trust would take title to estate property, then sell it and distribute the proceeds. *Id.* The proposed plan sought to exempt the debtors, the liquidating trust, and any third-party purchaser from stamp or similar tax. *Id.* The taxing authorities argued that such a "two-step transaction" was not explicitly authorized by the Bankruptcy Code and therefore not subject to exemption. *Id.* at 784. However, the Fourth Circuit found that the transaction qualified as an adequate means of implementation for the liquidation and distribution of creditors under a plan. *Id.* at 785. On this basis, the transactions occurred "under a plan" for purposes of exemption under 1146(a). *Id.*

13. The proposed transactions under the Plan are similar to the "two-step transaction" that was exempted in *Antonelli*. The Debtor is purchasing the Property and in turn selling the Property and paying creditors with the Sale

8

Proceeds. This serves as the only means for providing a recovery to the Debtor's creditors and is necessary for the consummation of the Plan. Under the reasoning of *Antonelli*, the Debtor's own "two-step transaction" is the means for implementing the Plan and these transactions should also be exempt.

14. The Debtor submits that because these transactions are critical to the consummation of the Plan, they therefore qualify for exemption under *Orlando* and *Antonelli*. While, the Courts in *Orlando* and *Antonelli* have taken a broader view of the 1146 exemption by including non-debtor transactions that are necessary to consummate a plan, there are no non-debtor transactions under the Plan.

II. <u>Transactions Are Exempt When Estate Assets Are Being Transferred.</u>

15. Prevailing Second Circuit precedent exempts transfers that are "necessary to the consummation of a plan." *City of New York v. Jacoby-Bender (In re Jacoby-Bender, Inc.)*, 758 F.2d 840, 842 (2d Cir. 1985). This has further been interpreted to mean that only transfers of estate assets are exempt. *See In re Kerner Printing Co.*, 188 B.R. 121, 124 (Bankr. S.D.N.Y. 1995) ("Cases in which § 1146(c) has been found applicable uniformly involve transfers of estate assets by debtors-in possession"). Courts in the Second Circuit routinely exempt transfers of estate assets that are necessary to consummate a plan. *See, e.g., City of New York v. Smoss Enters. Corp. (In re Smoss)*, 54 B.R. 950, 950 (E.D.N.Y. 1985) (transfer of property by the debtor was exempt); *City of New York v. Baldwin League of Ind. Schools (In re Baldwin League of Ind. Schools)*, 110 B.R. 125, 127 (S.D.N.Y. 1990) (mortgage given by debtor was reasonably necessary to the plan and therefore

9

exempt); *Jacoby Bender*, 758 F.2d at 841 (deed transferred by debtor was exempt); *In re NEW 118th, Inc.*, 398 B.R. 791, 798 (Bankr. S.D.N.Y. 2009) (delivery of deed necessary to consummation of plan and therefore exempt).

16. The DOF cites three cases to support denial of an exemption — *In re Amsterdam Ave. Dev. Assocs.*, *In re Kerner Printing Co.*, and *Mensch v. Eastern Stainless Corp. (In re Eastmet Corp.)*. Two of these three cases involve a non-debtor third party seeking to exempt a mortgage that is unnecessary to consummation of the plan and all three involve non-debtor's seeking the exemption. In each instance, the exemption was denied. The Court stated in *Amsterdam*, that "there is no evidence that Congress intended, or that section 1146(c) is to be construed, to provide an exemption from state and local mortgage taxes on a mortgage given by a purchaser to a bank in order to fund a purchaser of estate property." 103 B.R. 454, 461 (Bankr. S.D.N.Y. 1989). In *Kerner*, the court rejected the debtors' attempts to exempt a transfer of property from a non-debtor entity that received property from the debtor to a third-party purchaser. 188 B.R. 121, 125 (Bankr. S.D.N.Y. 1995). Notably, the DOF in *Kerner* did not challenge the application of an 1146 exemption to the transfer of property to the debtor or transfers of property by the debtor. *Id.* Finally, in *Eastmet*, the Fourth Circuit found that only a deed transferring property out of the debtor was exempt, not the "instrument securing the purchaser's indebtedness to third parties." 907 F.2d 1487, 1489 (4th Cir. 1990).

17. The Debtor believes the facts presented by its Plan differ significantly from those of *Amsterdam*, *Kerner*, and *Eastmet*. Here there are two deeds, one where the Debtor is the transferee, and one where the Debtor is the transferor. The Property is coming into the Debtor's estate and being transferred out of the estate, and therefore it qualifies for an exemption under prevailing Second Circuit case law. The Debtor is not seeking to exempt a third-party non-debtor transfer as argued by the DOF.

**WHEREFORE**, the Debtor submits that the DOF Objection should be overruled in its entirety and the transactions contemplated under the Plan be exempt under section 1146(a) of the Bankruptcy Code.

Dated:   New York, New York
         May 18, 2023

**LEECH TISHMAN
ROBINSON BROG, PLLC**
*Counsel to the Debtor*
875 Third Avenue, 9th Floor
New York, New York 10022
Tel: No.: 212-603-6300

By: /s/ Fred B. Ringel
   **Fred B. Ringel**